IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

S.C.,[1]

        Plaintiff,

vs.                                        Case No. 18-1334-SAC

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

**MEMORANDUM AND ORDER**

On April 8, 2015, plaintiff filed an application for social security disability insurance benefits and for supplemental security income benefits. The applications alleged a disability onset date of December 31, 2004. The applications were denied initially and on reconsideration. An administrative hearing was conducted on July 25, 2017. The administrative law judge (ALJ) considered the evidence and decided on November 8, 2017 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initials are used to protect privacy interests.

1

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See <u>Potter v. Secretary of Health & Human Services</u>, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file. 20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. See <u>Wall v. Astrue</u>, 561 F.3d 1048, 1052 (10th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1140 (10th Cir. 2010)(internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084

(10th Cir. 2007).  The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. THE ALJ'S DECISION (Tr. 12-25).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 13-14). First, it is determined whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past

relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.  In this case, the ALJ decided there was no evidence to support plaintiff's claim of disability during the time period when plaintiff had insured status. (Tr. 15).  Thus, plaintiff was not qualified for disability insurance benefits.  The ALJ further decided that plaintiff's application for supplemental security income benefits should be denied at the fifth step of the evaluation process.

The ALJ made the following specific findings in her decision. First, plaintiff last met the insured status requirements for Social Security benefits on December 31, 2004.  Second, plaintiff has not engaged in substantial gainful activity since April 8, 2015.  Third, since April 8, 2015, plaintiff has had the following severe impairments:  arthropathies/leg length discrepancy; major depressive disorder; anxiety, and temporomandibular joint dysfunction (TMJ).  Fourth, plaintiff does not have an impairment

4

or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Fifth, plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c) except that: plaintiff can lift/carry 50 pounds occasionally and 25 pounds frequently, with pushing and pulling limited to the same weights; plaintiff can stand/walk 6 hours in an 8-hour day with normal breaks, and sit for 6 hours in an 8-hour workday with normal breaks; plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl; he can understand, remember, and carry out intermediate (SVP 3 and 4) instructions; he can have occasional public contact and occasional supervisor and coworker contact. Finally, the ALJ determined that, considering plaintiff's age, education, work experience and residual functional capacity (RFC) that there are jobs that exist in significant numbers in the national economy he can perform, such as lamination assembler, machine finisher, and metal spraying machine operator. These jobs were described by the vocational expert as SVP 2, unskilled jobs. (Tr. 55).

III. THE DENIAL OF BENEFITS SHALL BE AFFIRMED.

    A. Dr. Porter's opinion

Plaintiff's arguments to reverse the denial of benefits focus upon the opinion of Dr. Garry Porter. Dr. Porter provided mental health care to plaintiff. In 2017, he completed a medical source

5

statement which is largely a check-a-box form. The statement indicates that plaintiff has an alcohol abuse disorder and a depressive disorder. (Tr. 1048). It states that plaintiff "can do well" when he is "clean." Id. The form also states that plaintiff would miss as many as four days a month because he was having a "bad day." Id. Of twenty categories of mental functioning, Dr. Porter checked four as "moderately limited" and the rest as "mildly limited."[2] (Tr. 1048-49). The four "moderately limited" categories were: the ability to carry out very short and simple instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; and the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. 1049). The form defines "moderately limited" as: "Impairment levels are compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." (Tr. 1048). Dr. Porter did not provide a narrative discussion of plaintiff's functional capacity on the form, aside from indicating that plaintiff can do well when he is sober.

The ALJ gave Dr. Porter's opinion only "partial weight." (Tr.22). The ALJ stated:

---

[2] For each category, the options on the form are "mildly limited", "moderately limited", "markedly limited", and "extremely limited."

6

> Dr. Porter's opinion as to moderate limitations is generally consistent with the medical evidence which showed only few adverse findings, mostly mild (Exhibits B16F/22 and B19F/4-6). The consultative psychological examination also showed only mild issues (Exhibit B17F/7-10). However, Dr. Porter's opinion as to missing work appears to be related to the claimant's alcohol use. The record did not detail significant alcohol use during the relevant period (see, e.g., Exhibit B22F/20).

Id. One of the exhibits to which the ALJ referred (Ex. B19F/4-6) was a 2015 examination by Dr. Porter which indicated mostly normal and good ratings, including "good" concentration, perception and intelligence. (Tr. 802). Another exhibit cited by the ALJ (Ex. B16F/22) described plaintiff as manifesting good hygiene and appropriate dress, with logical and sequential thought processes. (Tr. 769).

B. Other medical opinions

The ALJ referred to the consultative examination of Dr. T.A. Moeller which was conducted in 2015. (Ex. No. B17F; Tr. 773-783). Dr. Moeller's report, which is largely narrative, concluded that plaintiff exhibited appropriate grooming and hygiene; that plaintiff could carry out simple and intermediate level instructions; that there were no psychological barriers precluding plaintiff from working 40 hours a week or from maintaining sufficient social interaction with coworkers and supervisors to maintain employment; and that plaintiff could maintain frequent interaction with the public. Dr. Moeller found that plaintiff had adequate attention and concentration, average intelligence, and

7

adequate short-term and long-term memory. The ALJ gave moderate weight to Dr. Moeller's opinion. (Tr. 22).

The ALJ gave strong weight to the consultative opinions of Dr. Martin Isenberg and Dr. Robert Blum. (Tr. 22). Dr. Isenberg concluded that:

> [Plaintiff] has the ability to understand, remember, and carry out short and simple instructions. He can adapt to most changes in the work place and can make simple work-related decision[s]. He can be anticipated to have moderate difficulty interacting with supervisors and co-workers and will perform best in a setting where he can work relatively independently and social contact is limited.

(Tr. 117). He found that plaintiff was not significantly limited in carrying out very short and simple instructions, but moderately limited in his ability to carry out detailed instructions. (Tr. 116). He also concluded that plaintiff was not significantly limited in maintaining attention and concentration for extended periods. Id. Dr. Blum concluded that plaintiff "should be capable of understanding and carrying out intermediate instructions and adequate interactions with coworkers and the general public." (Tr. 141). But, he also concluded that plaintiff's ability to carry out, understand and remember detailed instructions was moderately limited and that his ability to maintain attention and concentration for extended periods was moderately limited. (Tr. 138-39).

8

C. Vocational expert's testimony

During the examination of the vocational expert, plaintiff's attorney asked the expert to consider a situation where an individual was "unable to occasionally, throughout the workday, be able to carry out even very short and simple instructions; and then occasionally . . . wouldn't be able to even maintain attention and concentration for at least two hours at a time." (Tr. 55-56). The expert responded that if it happened up to 33% of the time or if attention and concentration could not be maintained for at least two hours, it would preclude all work. (Tr. 56).

D. Plaintiff's arguments

Plaintiff argues that the decision to deny benefits should be reversed because, although the ALJ gave "partial weight" to Dr. Porter's opinion and found that, as to moderate limitations, it was "generally consistent with the medical evidence," he did not include those moderate limitations in the RFC or explain why the moderate limitations were omitted. Plaintiff further argues that the vocational expert testified that the moderate limitations would preclude competitive work.

Before directly discussing plaintiff's arguments, the court notes that the ALJ is required to consider every medical opinion and "discuss the weight he assigns to such opinions." Keyes-Zachary v. Astrue, 695 F.3d 1156, 1161 (10th Cir. 2012). In conducting this evaluation, the ALJ considers the following factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c). But, the ALJ's decision need not include an explicit discussion of each factor. Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007). Nor is there a requirement of direct correspondence between an RFC finding and a specific medical opinion on functional capacity. See Chapo v. Astrue, 682 F.3d 1285, 1288-89 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir.2004). By deciding what weight to give a doctor's opinion, an ALJ does not overstep "'his bounds into the province of medicine.'" Arterberry v. Berryhill, 743 Fed.Appx. 227, 231 n.1 (10th Cir. 2018)(quoting Miller v. Chater, 99 F.3d 972, 977 (10th Cir. 1996)). An ALJ, however, must explain why he rejects some limitations in an uncontradicted medical opinion while adopting others. Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007).

This is not a case like Haga where the ALJ, without explanation, decided not to credit moderate limitations described in an uncontradicted medical opinion. Dr. Porter's opinion that

10

plaintiff is moderately limited in following short and simple instructions and maintaining concentration for extended periods is not uncontradicted. The ALJ gave greater weight to opinions from Dr. Moeller and Dr. Blum that indicated that plaintiff could perform work involving intermediate instructions and requiring adequate concentration over extended periods. We assume plaintiff would consider Dr. Moeller and Dr. Blum's opinions to be inconsistent with the moderate limitations Dr. Porter marked on the form. It is not entirely clear, however, that Dr. Porter's opinion excluded plaintiff from maintaining a job with intermediate instructions and extended concentration. Dr. Porter stated that plaintiff can do well when he is clean (Tr. 1048), his examination of plaintiff in July 2015 showed that plaintiff had good intelligence and concentration (Tr. 802), and the level of impairment from a moderate limitation (as defined on the form completed by Dr. Porter) does not exclude all "useful functioning." (Tr. 1048).

This is also not a case where an ALJ without qualification accepts a doctor's finding of limitations, but the ALJ fails to account for those limitations in the RFC. The ALJ stated that he gave "only partial weight" to Dr. Porter's opinion and that Dr. Porter's opinion as to moderate limitations "is generally consistent with the medical evidence which showed only few adverse findings, mostly mild." (Tr. 22). The ALJ cited exhibits

providing evidence of mild findings and interpreted the "moderate limitations" in Dr. Porter's statement as "generally" in line with those findings. The ALJ's citation to other medical evidence when discussing Dr. Porter's medical opinion satisfied the specificity requirement for explaining the weight given to a treating source's medical opinion. See Oldham, 509 F.3d at 1258. The court acknowledges plaintiff's contention that Dr. Porter's report documents a 30% reduction in the ability to carry out very short and simple instructions, the inability to maintain attention and concentration for at least two hours at a time, and an inability to adhere to basic standards of neatness and cleanliness 30% of the time. See Doc. No. 11, p. 9. The record, however, shows that the ALJ did not accept this interpretation of Dr. Porter's findings as representative of plaintiff's functional capacity. Therefore, the part of the vocational expert's testimony which was contingent upon that interpretation may be disregarded.

Plaintiff cites several cases in support of his position, but the court finds these cases are distinguishable. The court's opinion in Schmitt v. Colvin, 2014 WL 3519091 *6-7 (D.Kan. 7/16/2014) is distinguishable because the ALJ in that case gave "significant weight" not "partial weight" to the doctor's opinion, did not compare the moderate limitations suggested by the doctor to mild findings, and did not give greater weight to opinions suggesting lesser limitations. Also, in Chapo, 682 F.3d at 1291,

12

the medical opinion, unlike Dr. Porter's opinion, was not contrasted by another medical source and was not considered inconsistent with other evidence in the record. In Lodwick v. Astrue, 2011 WL 6253799 (D.Kan. 12/13/2011), the ALJ gave "substantial weight" to a doctor's opinion and considered it "well-supported" and consistent with the longitudinal record, but the ALJ did not include some of the findings in the RFC or explain the refusal to do so. In the case at bar, Dr. Porter's opinion was given "partial weight" and the moderate limitations he expressed were considered consistent with the mild findings in the record.

Plaintiff also cites Warzeka v. Colvin, 2016 WL 3902751 (D.Kan. 7/19/2016). In Warzeka, the ALJ gave "some weight" to a doctor's opinion and made RFC findings which adopted five moderate limitations in a doctor's opinion. But, the ALJ ignored five other moderate limitations without explanation. Here, the ALJ appeared to credit Dr. Porter's moderate findings to the extent those findings were consistent with the mild findings contained in the exhibits referenced in the ALJ's discussion of Dr. Porter's opinion. Therefore, an explanation was given for the ALJ's treatment of Dr. Porter's opinion. Plaintiff refers to Brillhart v. Colvin, 2015 WL 7017439 (D.Kan. 11/10/2015). This case is distinguishable because both sides agreed in Brillhart that the ALJ misinterpreted a doctor's opinion in a manner which the court found could impact the ALJ's findings. Finally, plaintiff cites

Gutierrez v. Colvin, 2013 WL 5200522 (D.Colo. 9/16/2013). In Gutierrez, the court reversed a denial of benefits because, among other reasons, the ALJ – without explanation – rejected a limitation on standing and walking made by the only examining physician who rendered an opinion regarding the claimant's physical functional capacity. Dr. Porter was not the only examining physician in the case at bar. It seems clear to the court that the ALJ found the opinion of Dr. Moeller, who also examined plaintiff, more persuasive and more consistent with the other findings in the record, which the ALJ considered mild. This is a sufficient explanation for tempering the "moderate" limitations described by Dr. Porter.

In sum, the court finds that the ALJ has adequately considered the record, and explained and supported her findings. The court further agrees with defendant that plaintiff's argument at its core is a request for this court to reweigh the evidence and substitute its judgment for that of the ALJ or to find that the ALJ accepted Dr. Porter's moderate limitations as interpreted by plaintiff, when such a finding does not appear warranted. These arguments should be rejected as the court ruled in Frakes v. Berryhill, 2017 WL 1354863 *4 (D.Kan. 4/13/2017). See also Michael T.G. v. Berryhill, 2019 WL 1978608 *4-5 (D.Kan. 5/3/2019)(rejecting an interpretation of the limitations allegedly substantiated by a form similar to that completed by Dr. Porter).

14

IV. CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's application for social security benefits and shall dismiss this action to reverse the decision.

**IT IS SO ORDERED.**

Dated this 28th day of May, 2019, at Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge